Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. We have three appeals to hear this morning. There will be a little extra time with one of the cases. Counsel, we're familiar with your cases, with the authorities that you cited in your briefs. We've read your briefs. We've looked at at least portions of the record. So in the limited time that you have this morning, you should feel free to get straight to the heart of your argument in the event that you're not you've filed a brief and everything that you've argued in it is still under submission. So let's try to use this time as productively as we can. If the court has questions for you, of course, you need to feel free to finish answering your questions. But otherwise, be mindful of the clock. When the clock expires, it's time to wrap up. Be mindful of our time so that we can keep these cases moving along this morning. Our first appeal this morning to hear is Holland versus Cyprus Insurance. Um, Miss Daniel, thank you, Your Honor. May it please the court. I'm Lori Webb, Daniel, representing appellant. But the one that will obviate the other issues if the court were to rule in our favor. It also is an issue of great public importance. Now, in this case, uh, the trial counsel argued that, uh, the direct action statutes should not were not implicated in this case and that it was extremely prejudicial, uh, to have them and to bring Cyprus Insurance, the, um, motor carrier drivers, uh, insurer into the trial front and center. Now, the usual rule is that a plaintiff and injured party cannot sue, uh, the defendant insurer and cannot bring the insurer into a trial. Now there are Georgia has an exception, and that is with the direct action statute. Um, this is interrogation of common law, however, so the statute needs to be strictly construed. The problem we have here that we're facing in Georgia is that the direct action statutes have been amended and they've been they've evolved. And there's confusion in the case law because there's case law under older statutes that's no longer relevant to the newer statutes. Now, the primary statute on the direct action allowing, um, direct action against insurers is the Motor Carrier Act. That's now codified at O. C. G. A. Section 40-1-1 12. Now that statute, uh, is limited to intrastate, uh, motor carriers. It does not expressly in that that title and that part of our code, uh, disclaims applicability to interstate. Uh, this was an interstate intrastate trip, wasn't it? No, Your Honor. It was I thought it was a load that was coming from Gainesville, Georgia, the fair, uh, Fairmount, Georgia. The testimony of the dispatcher found it. Document 200-2, um, page 17, uh, was asked about Mr Harper's schedule. Uh, and she said, uh, um, this is still what we do today. The loads that we have generate out of Gunterville, Alabama, and we'll go over to Tyson Fairmont, Georgia and leave from there and go over to Cargill in Gainesville, Georgia, and then back to Tyson Fairmount, Georgia. That's a dedicated hall. Most drivers, including Mr Harper, did that, did that load. So that's the testimony. Uh, it was interstate, and I, uh, refer the court to to that page of the transcript to show because it is important. Um, I thought Tina Glasgow testified that she Yeah, and that's that's included in this route that she also testified to. That was the usual route. Yeah, but that's that. It was that load from one place in Georgia to another place in Georgia that that he was hauling. Your honor. Respectfully, she addressed the route was from generated out of Guntersville, Alabama. Um, but let me just mention again, it was this theory raised below. So, yes, your honor, it was. And and part of the issue, as I mentioned, um, it's been confusing in Georgia on how to interpret and apply these direct action statutes. And it's very important. And I'm gonna where was it raised? Yes. So the pro council, uh, was very concerned about the prejudice. He moved for plaintiff had failed to prove that the direct action statutes applied. Now, at the J and O. B. Phase of the case, um, it was briefed further and expressly addressed the fact that this was interstate commerce and addressed the second statute that comes into play. And this is the, um, federal uniform carrier Registration Act, and that's found it 40-2-1 40. Um, and so the J and O. V. Um, rule 50, um, post trial briefing, which, by the way, is a document 223-1, um, goes and analyzes the text of that registration statute and explains that, um, what it does is it has at a carve out for interest state, and it is in that carve out that subsection D that you find a reference to the direct action statute, which is consistent, of course, with the 40-1-1 12. The district court this annual the district court here relied on federal district court decisions, interpreting the very same language in the prior version of the statute. And those courts had consistently ruled that that the language applied to both intrastate and interstate carriage. Exactly. What is wrong with the district court's evolved and been amended, and they're relying district courts are relying on prior cases. I know, but but the district court here, the important point, at least to me, is the district court said that although the statutes had been amended, the relevant language in the statutes remained the same. And so it was okay. It was appropriate to rely on prior case law interpreting the older version of the statute because the relevant language, no matter the amendment, had not changed your your honor. Thank you for pointing that out, because this is exactly why we have asked the court to certify this question. The Georgia Supreme Court. Now, after our J. N. O. V. Brief was filed, um, the Georgia Court of Appeals took up this issue, and it came through daily underwriters. It's cited in our brief, and it's a split opinion. Um, Judge McFadden wrote that, and he said he points out while our state appellate courts have not yet been called upon to construe the direct action provision of O. C. J. Section 40 dash 2 dash 1 40. He then refers to the district court cases you're talking about. Federal courts have consistently held that it applies to ensures both interstate and intrastate. Problem is, this is a split decision from the Court of Appeals. Judge McMillan joined in judgment. She did not agree with what Judge McFadden wrote. Okay? And then there was a dissent by Judge Phipps, who says, Wait a minute. Federal Uniform Carrier Registration Act. That's distinct from the Georgia Motor Carrier Act. It's a totally different thing. He thought it should not come into play here. This is why we're asking you to Supreme Court so it can explain what subsection, uh, D four of the Federal Uniform Carrier Registration Act means. Uh, is that just referring to the carve out for the interest rate? Uh, commerce that you want us to certify a question about a federal statute? No, no, it's it's it's the Georgia statute is implementing a federal interstate trucking. Right. I thought I heard you just say a moment ago that you wanted us to have to have the Georgia Supreme Court interpret the federal statute. No, Your Honor. It's the Georgia statute. We refer to it as federal, but it's the Georgia part counterpart to what is a federal scheme governing interstate trucking. And that's where this language is. That's confusing that I think has confusing confusion. The statutes have been amended. The Georgia Supreme Court has not yet addressed that this statute came in 2005 and the Georgia Supreme Court hasn't addressed it yet. This is of huge importance to the trucking industry. It's highly prejudicial for motor carriers to be subjected, put in front of jurors and and have the Andrews case we cited discusses the there with their insurance company and what it does. And this is recognized by the Andrews decision. It causes jurors to be reckless, reckless in their award of damages. And I'm going to mention one other thing because I would want to say rebuttal. Your your time has expired. Mr Daniel. Thank you. Thank you, Your Honor. Um, Mr Carol. Thank you, Your Honor. May it please the court. I have the pleasure of I will start with the direct action statute because it's applicability contested here. Was that argument? Was that objection preserved? Uh, certainly not in the form they have presented it here, Your Honor. And in fact, they stipulated at trial that that the direct action part of this trial was to be submitted or agreed to to the jury. And so the jury was charged without objection to this language, which is in the record. I know the attorney for Bell in Cyprus stated, I think it's appropriate for the estate that it wants to, um, to mention. And it's it's a direct action statute, and the court's going to charge you. They are a proper defendant. And if your verdicts against Mr Harper, it's a verdict against the insurance company, right? Uh, that that is correct, Your Honor. Uh, and then the the actual instruction said, if you find in favor of the plaintiffs in your verdict should be against the estate and Cyprus Insurance Company because plaintiffs sued the insurance company under the direct action statute. Um, and the district court also read to the jury of stipulation a matter that the parties had agreed that the that that Cyprus Insurance Company policy in effect providing coverage to the tractor trailer at issue in this case was in effect on and included coverage for the incidents of December 8 2016. That is correct. What was this argument that that statute does not apply to this controversy ever? Was that objection ever made below? The only objection made below regarding the statutes on directed verdict, Your Honor, they argued that, well, you have to prove whether or not the insurance policy was filed with the appropriate state agency. And it was a curious argument, which if you look at the transcript, Judge story was trying to get at what are you arguing here? Because they claimed it didn't matter whether it was filed or not under the statute. They claim that the plaintiff just had to prove one way or the other. Once Judge story understood what they were actually saying, he quickly rejected that argument and rightfully so. And that's why they have not raised that on appeal. And in fact, they did not raise that argument again in their post trial motions. In their post trial motions, they changed course and they said, Well, under both direct action statutes, we're arguing that you have to prove interest state. Well, as as you noted earlier regarding this Glasgow's testimony, we certainly proved that this was an interest state trip. That's what they argued in their post judgment motions. Now on appeal, they changed course yet again with respect to the second statute 40-2-1 40. They claim now that that must apply to registration violations. Only they do maintain the post trial argument they made below regarding the interest state requirement for 40-1-1 12. And satisfied that requirement regarding the testimony that you referenced earlier, Judge Pryor. She said the question was and you assigned him the load coming from Gainesville to Fairmont Georgia in Gordon County, right answer. That is correct. And that's on pages 33-34 of document 200-2 in the record. So that that is clearly satisfied. And that is the only issue, the only issue that they raised below regarding these statutes that they are now asserting on appeal. Because again, the only argument they raised in the trial court regarding did you prove that the insurance was on file with the appropriate state agency that has been abandoned here on appeal. So when you consider that they've abandoned the only argument they made in the trial court and you couple that with the fact that they stipulated that there's coextensive liability or coexistent liability, there's no argument to be made here. I mean, if they want to certify this question, it needs to be not to the Georgia Supreme Court because this question is settled in the state of Georgia and we have really decades of case law dealing with the same applicable language of the statutes which make it clear. Mr. Carroll, let me see if I understand the situation. I understood that the only argument that was made in the trial court before the verdict was the one about you had to file with a state agency and they hadn't done it. And that, as you say, that argument has not been raised on appeal. So it's weighed. It was, as I understand it, it was not until after uh verdict in the motion for J. N. O. V. That they made these other arguments about, uh, uh, it had to be intrastate. Is that correct? That is correct. Your stipulated that the insurance company could appear at trial and they stipulated at least did not object to the instruction to the jury. If you find against Harper, then the verdict goes against, uh, uh, the insurance company also. Why does that not moot any issue about whether or not, uh, the statutes applied to intrastate, uh, or not? But it does boot those issues of your honor entirely in our position. And in addition to the issues, the facts that you noted, they did not object to the inclusion of cypress on the verdict form. Uh, in this case, in fact, if you look at the closing arguments that were that were made, the defense talked about insurance way more than the more question my law clerk has found. He searched the record very carefully. I think, uh, he has found that intrastate was never mentioned before the verdict, except in a letter on the third day of trial, a letter that was to, uh, or applies only to intrastate. And this is an interstate shipment. Uh, now, even if that did raise the issue, it had already been stipulated. And, uh, uh, there was no objection to the, uh, instruction to the jury. So I don't see what damage that could be anyway with respect to that. Can you help me? No, you are absolutely correct, your honor. And that gets us to a fundamental question here, Judge Anderson. And that is if you're complaining about the prejudice of the insurance company being a defendant as the statutes make it clear that they are, they can be sued independently. Then what what order or ruling of judge story are you pointing to that you say he aired? They can't even point to a particular ruling where they say, here is the ruling that we want to have reversed in this case. And the reason that is, Judge Anderson is because if you go through the trial transcript as you and your clerks have, this was not an issue at trial beyond beyond the stipulation. It was never an issue in trial. They did file a motion in limine where they said they want to limit the liability insurance. In other words, they didn't want counsel standing up pounding liability insurance, liability insurance, and they did not want any witnesses from the insurance company represent representatives of the insurance company called to testify. But Judge story granted that motion and there was never an objection during trial that the plaintiff's counsel had somehow violated that order regarding references to to insurance. And again, the defense talked about insurance well more than plaintiff's counsel did at help me with one more thing. I thought that the uh defendants were arguing that 40-1-1 12 uh applied only to intrastate. And and this was to enter state. Am I wrong? Well, what happened was your honor. They didn't raise that issue in the post trial. They claim that both of them were intrastate only. Both of the statutes is what they argued post trial in their post trial motions that both statutes required intrastate proof. Then now on appeal, they changed that argument under 1 40. Now they're arguing that it because that statutory scheme does not create a cause of action whereby you sue an insurer of that registration argument is made for the first time on appeal. That is correct. You know, that is absolutely correct. That is, that is fully way. Mr. Carroll, let me see if I've got this. Um, number one, they've, they've argued that it's that this statute 1 40 uh applies only to intrastate trucking. You say number one, Miss Glasgow testified that this accident was on an intrastate trip, right? In unrebutted fashion. Yes, that's point number one. Point number two, the Georgia Court of Appeals just two years ago ruled that it that this statute permits jointer of an insurance company even when the defendant was engaged in interstate commerce at the time of the accident. Uh, that's the daily underwriters versus Williams decision, right? That's and then point number three, this issue was raised if at all for the first time post verdict after the insurance company had stipulated, uh, that the direct action statute applied. Yeah, that's correct. Judge prior. Any one of those three is a, it would be a basis for affirming. Is that right? That is correct. Your honor. Yes. Mhm. And, and your honor, unless the court has any more questions on that particular issue, um, I would point out to you, Mr Carroll, you know, the only issue that was raised in the opening argument was this issue. If you, if you raised, if you want to present argument about anything else, uh, it will give Miss Daniel the opportunity to address it for the first time. But if you don't raise it, I'm not going to allow her on rebuttal to raise an argument that wasn't raised in opening. Sure, your honor. And I appreciate that. Um, but let me make a couple more points on the direct action with the chief judge's permission. I do want to ask, uh, you, uh, Mr Carroll, uh, about the amount of the attorney's fees. $6 million. It seems to be based entirely on the contingency fee, uh, arrangement. And it seems to me that the two recent decisions of the Georgia Appellate Court, Georgia Court of Appeals, Keniston and Cajun cast real doubt on that. And it seems to me that, uh, we probably ought to just remand that issue to the, uh, district court. These Uh, thank you. Place. Uh, Chief Judge Pryor. Yep. So, Mr Carroll, thank you, Judge Anderson. Let me mention, let me talk about those two cases. Uh, both of those cases, um, which were recently decided were under 9 11 68. Okay. And one of those that they have referenced the Keniston case, the reasoning regarding attorney's fees is not binding precedent in Georgia. That was a 13 judge panel. Only four of the judges signed off on that. And all of all that Judge Doyle said in that case is that you have to have more than the contingent free fee contract. And that is what the Georgia Supreme Court had said in couch. In this case, we offered significantly more than that because the detailed task records of Mr Lazenby Plaintiffs Council were presented into evidence regarding all of the work he did. And we had an independent expert attorney who specializes in the same type of law come in and go through not only the lodestar factors and that that attorney said that the appropriate fee would be $350 an hour. And the fee you have is over $5,000 an hour. Your honor, the appellants have said 3 50. That is, that is incorrect. If you look at that line of questioning regarding defense counsel, they asked him, well, you mentioned before $350 an hour. He said, no, that is a consideration. His explicit testimony was, I think that is low because that is for a an insurance defense counsel in a in a injury case. I thought the lawyer testified that 40% contingency fee was customary and standard in these kinds of cases. He judged prior and he went through the entire body of work done by plaintiffs counsel in this case to reach that decision. And I see that my time has expired. Your honor, may I give the court two citations that were not in our brief without any discussion of them. I just want to give the citation about what regarding this attorney fee issue reasonableness. Yes. One is city of Atlanta versus Hofrichter and that's 2 91 Georgia appeals 8 83 663 southeastern 2nd 3 79 2008 case. The other is Brock built LLC versus Blake 3 3 16 Georgia Appeals 7 10 7 30 southeastern 2nd 1 80 2012 case. And unless the court has any further questions, thank you, your honors. Are there any further questions? Okay, Miss Daniel, you say five minutes. Thank you, Your Honor. Uh, let me be issued first and I do have something I'd like to say on the direct action point as well. But on the attorney's fee, hmm, there's a difference between what a plaintiff owes his or her lawyer and what is a reasonable attorney's fee under the statute. If you read the couch decision, you'll see it cites twice to a 10th Circuit case called Centennial Archaeology. That case has an excellent discussion of what fee shifting statutes. O. C. J. 13-6-11 like O. C. J. 9-11-68 is a fee shifting statute. Couch refers to both addresses both together. Reasonable attorney's fee is an objective standard. It doesn't depend on how rich or poor you are. It doesn't depend on whether you have to have a contingency fee contract with your or whether you paid by the hourly rate. And that is why this $6 million award cannot be sustained because it doesn't satisfy the couch test that requires proof. In addition, other proof than the contingency percentage. Why not? We have a local lawyer who testified this was a customary and standard fee and that and he went through all the factors about its reasonableness based on the difficulty of case, the preclusion of other employment by the attorneys due to taking the case. Why isn't that sufficient under couch? It's irrelevant. It's not the controlling issue because here's what couch says the jury may consider a contingent fee arrangement and the amount it would have generated as evidence of the usual and customary fees and determining both the reasonableness and the amount of the award of attorney's fees. When a party seeks fees based on a contingent fee agreement, the party must show that the contingency fee percentage was a usual or customary fee for such a case and that the contingency fee was a valid indicator of the value of the professional services rendered. Couch allows testimony about, isn't it? Excuse me, your honor. Yes, by hours or rates. And that's the check. Um, so your honors, um, as it says that they have to prove also they have to introduce evidence of the of hours and rates. But it doesn't say that that's determinative of the reasonableness of the fee couch when that saw that it was the amount awarded was the contingency percentage reverse. I'd like to turn now to an important point that it goes to the question of what was argued in the court below and to make clear our position was presented in the post trial motion below. I'm going to refer the court to the Home Depot case. It's cited in our brief. It says, uh, uh, there is a difference between raising new issues and making new arguments on appeal. Um, if an issue is properly presented, a party can make any argument in support of that issue. Parties are not limited to the precise arguments they've made below. There was in the court below a motion for directed verdict, saying that the plaintiff had not proven that the direct action statutes were implicated. That argument that that issue that issue that is the issue did worthy statutes implicated. And that issue was expanded on post trial. It's a pure issue of law in statutory interpretation, and it was let me make sure I understand this is Daniel that that would depend on an issue of fact about whether the trip was entrusted or interstate, right? Your honor, that's right. And that would have to be presented to the jury if there was, uh, an issue of fact about that. Well, the transcript says what it says by the dispatcher. So, uh, that's I think I think the chief's question is whether or not the jury was asked to decide the interstate versus interstate issue. And no, the jury was not instructed on that. That is the issue of law. The whole point was, but if there's conflicting the testimony that you and Mr Carol have cited at most creates a jury issue on whether or not this trip was interstate or interstate in character, right? Your his argument is based on some of the testimony of trial was that the leg of this trip was interest state. Your argument is you've got to look at the trip in a longer way where it really began and where it really ended. And when you look at that, it's interstate. But if there's, but if that evidence can be seen in two different ways, who gets to decide the character of the trip? The judge or the jury? Yes, your honor. May I answer the question is my may. Thank you. Uh, if you look at the daily underwriter decision, that's the one that came out after our briefing in the trial court. It point. It refers to the trip test. It will answer that question. You don't just take a segment. Uh, you look at at the root and and so that case will answer that. And it cites additional Georgia authority authority. Okay, Miss Daniel, we have your case and we'll move on to the second appeal this morning. Thank you, Your Honor. Thank you.